**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LIONEL STAINE,** : | |
| : | |
| Petitioner : | |
| : | **CIVIL NO. 3:CV-16-0265** |
| v. : | |
| : | **(Judge Caputo)** |
| **L.J. ODDO,** : | |
| : | |
| Respondent : | |

**M E M O R A N D U M**

**I.    Introduction**

On February 8, 2016, Lionel Staine, a prisoner formerly confined at the Allenwood Federal Correctional Complex in White Deer, Pennsylvania,[1] filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his loss of good conduct time (GCT) after a disciplinary conviction for assault, possession of a weapon, threatening another with bodily harm, and refusing to obey an order. (ECF No. 1, Pet.) As relief, Mr. Staine seeks expungement of the disciplinary conviction and the reinstatement of forfeited GCT. He has paid the $5.00 filing fee.

The government filed a Response on March 16, 2016. (ECF No. 5, Resp.) Mr. Staine filed a Reply on April 14, 2016. (ECF No. 8, Reply.) This matter is now fully briefed and the Court has considered all submissions by the parties.

For the reasons stated herein, the Petition will be denied.

---

[1] Mr. Staine is presently housed at USP Lee, in Jonesville, Virginia.

## II.     Standard of Review

A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to 28 U.S.C. § 2241, "as the action could affect the duration of the petitioner's sentence." *Queen v. Miner*, 530 F.3d 253, 254 n. 2 (3d Cir. 2008).

Exhaustion of available administrative remedies is a prerequisite to habeas corpus relief under § 2241.[2] *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).

## III.    Background

On April 21, 2014, while housed at USP-Canaan, staff ordered Mr. Staine and his cellmate (Reid) out of their cell to submit to a pat search. (ECF No. 1, Pet., Discipline Hearing Officer (DHO) Report, p. 19; *see also* ECF No. 5-1, Exs. to Resp. to the Pet. for Writ of Habeas Corpus, Incident Report No. 2574103, p. 23.) Officer D. Smith offers the following eyewitness account of the events as reported in the Incident Report:

> Inmate Reid, exited the cell, submitted to the pat search. Inmate Reid was ordered to keep his hands on the wall, disobeying the order, the inmate moved into the doorway of cell 131 attempting to block staff from observing inmate Staine. Inmate Staine was observed with his arm in the bottom wall locker. I ordered to remove his arm and exit the cell. Inmate Staine refused my direct order twice. Inmate Staine was observed removing a sharpened metal rod approx. 8 inches in length in his right hand. Inmate Staine

---

[2] The Bureau of Prisons (BOP) concedes Mr. Staine properly exhausted his administrative remedies with respect to Incident Report 2574103. (ECF No. 5, p. 6.)

-2-

> bent the sharpened weapon and threw the weapon into the toilet, in an attempt to flush the weapon. I started to move into the cell, when inmate Reid attempted to push me, attempting to keep me out of cell 131. I moved passed inmate Reid and placed inmate Staine on the floor of the cell. Inmate Staine attempted to resist my efforts of placing him on the ground and inmate Staine bite [sic] on my right wrist, breaking my skin with his teeth. Inmate Staine continued to resist staff efforts to place hand and leg restraints on him by swinging his arms and attempting to kick staff with his legs. Inmate Staine made several threats to staff stating "I kill you" and "you're a dead man." The sharpened approx. 8 inch weapon was recovered by staff.

(ECF No. 5-1, Incident Report 2574103, p. 23.) Mr. Staine was charged with violating the following offenses: assault (Code 101); possession of a weapon (Code 104); destroying and/or disposing of any item during a search or attempt to search (Code 115); interfering with a staff member in the performance of duties (Code 198); threatening another with bodily harm (Code 203); and refusing to obey an order (Code 307). (*Id*.)

Incident Report 2574103 was prepared on April 21, 2014. (ECF No. 1, Pet, DHO Report, p. 19; *see also* ECF No. 5-1, Incident Report 2574103, p. 23.) A copy of the report was delivered to Mr. Staine on April 21, 2014. (*Id*., p. 23.) The disciplinary matter was suspended pending referral to the FBI. (*Id*., p. 24.) The matter was released for administrative processing and investigation on May 23, 2014. (ECF No. 1, Pet, DHO Report, p. 19.) A copy was delivered to Mr. Staine the same day. (ECF No. 5-1, p. 23.) On May 26, 2014, Mr. Staine appeared before the Unit Disciplinary Committee (UDC), which was comprised of a single staff member. (ECF No. 5-1, Incident Report 2574103, pp. 23 - 24.) Mr. Staine indicated the "Incident is not accurate." (*Id*., p. 23.)

Due to the seriousness of the charges, the matter was referred to the DHO. (*Id*.) The same day, staff notified Mr. Staine of the referral and gave him a copy of the Inmate Rights at Discipline Hearing. (*Id*., p. 26.) Mr. Staine was apprised that he had the right: (1) to have a written copy of the charges against him at least 24 hours prior to appearing before the DHO; (2) to have a full-time staff member to represent him before the DHO; (3) to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence on his behalf; (4) the right to remain silent or present a statement; (5) to be present during the disciplinary hearing except during deliberation or when institutional safety would be jeopardized; (6) to be advised of the DHO's decision and the facts supporting that decision except where institutional safety would be jeopardized; and (7) to appeal the decision of the DHO within 20 calendar days of notice of the DHO's decision. (*Id*.) Mr. Staine refused to sign the acknowledgment form indicating he was advised of these rights. (*Id*., pp. 26 - 28.) He did, however, request a staff representative and indicated he would not call any witnesses. (*Id*., pp. 26 - 30.)

On June 12, 2104, the DHO conducted a hearing. The DHO reviewed Mr. Staine's rights with him. (*Id*., pp. 35 - 36.) Mr. Staine advised the DHO that he "never received a copy of the incident report." (*Id*., p. 35.) The DHO noted the alleged procedural error on the record. (*Id*.) The DHO noted that the record showed that Mr. Staine received a copy of the incident report on April 21, 2013 and again on May 23, 2014. Nonetheless, the DHO afforded Mr. Staine the opportunity to postpone the hearing or waive the 24-hour notice and proceed with the hearing. (*Id*., pp. 23 and 35.)

-4-

Mr. Staine affirmed, in the presence of a witness, that he wished to waive the 24-hour notice and proceed with the hearing by signing a waiver form. (*Id*., pp. 27 and 35.)

Mr. Staine's appointed staff representative was present at the hearing. He affirmed reviewing the "Duties of Staff Representative" and agreed to appear on Mr. Staine's behalf. (*Id*., p. 34.) The representative noted that all documentation in reference to the incident report had been disclosed to him. (*Id*.) At the hearing Mr. Staine requested that his "staff rep [ ] review the camera." (*Id*., p. 35.) The representative stated he watched the video related to the incident but "couldn't see in the cell" and "couldn't hear anything." (*Id*. at p. 35.)

When questioned by the DHO, Mr. Staine admitted that he and his cellmate were the only inmates in their cell. He denied biting Officer Smith or seeing his cellmate bite the officer. (*Id*.) Mr. Staine did not recall whether Officer Smith was in his cell on April 21, 2014, and denied making threatening statements to staff or refusing to obey any order. (*Id*.) Mr. Staine did admit that the weapon depicted in the photographic evidence "was in [his] possession at one time" and that he "threw it in the toilet" because he did not "want [staff] to think [he] had intentions to use it on him." (*Id*., p. 35.)

In addition to Mr. Staine's verbal statements, the DHO notes "while a review of media of the incident was conducted the particulars of the matter in cell 131 are not discernible." (*Id.*, p. 38.) The DHO relied on the eye witness account of Officer Smith, the author of the Incident Report, and the thirteen staff members' memoranda who responded to Mr. Staine's cell on April 21, 2014. (*Id*., pp. 42 - 55.) Officer Grotefend

noted that Inmate Reid attempt to block staff from entering the cell as "Mr. Staine went to his bottom locker and retrieved a metal instrument," and "then ran to his toilet in an attempt to flush the metal instrument." (*Id*., p. 46.)  Officer Smith "ordered inmate Staine to remove his arm and exit the cell.  Inmate Staine refused [his] direct order twice.  Inmate Staine was observed removing a sharpened metal rod approx. 8 inches in length in his right hand.  Inmate Staine bent the sharpened weapon and threw [it] into the toilet." (*Id*., p. 50.)  Officer Grotefend retrieved the metal instrument from the toilet before it flushed down the toilet.  (*Id*., p. 46.)  When Officer Smith attempted to "place inmate Staine on the floor of the cell[,] [i]nmate Staine attempted to resist [his] efforts of placing him on the ground and inmate Staine bite [him] on [his] right wrist, breaking [Officer Smith's] skin with his teeth." (*Id*., p. 50.)  Officer Galinsky confirms Mr. Staine attempts to resist staff efforts to place him in restraints. (*Id*., pp. 45 and 50.)  "Both inmates within the cell were fighting staff by kicking at staff members who were attempting to restrain them." (*Id*., p. 45.)  "Inmate Staine made several threats to staff stating "I kill you' and 'you're a dead man'." (*Id*., p. 50.)  The DHO also considered the Injury Assessment and Followup (Medical) and photos of Senior Officer Grotefend and Senior Officer Smith. (*Id*., p. 36.)  The BOP Health Services Clinical Encounter and photographs of Mr. Staine and his cellmate were also reviewed.  (*Id*.)  Finally, the photograph of a bent sharpened piece of metal was considered.  (*Id*., p. 35 and 57.)

After consideration of the greater weight of the evidence listed above and at the conclusion of the hearing, the DHO found that Mr. Staine had committed the prohibited acts of assault (Code 101), possession of a weapon (Code 104), threatening a staff

member (Code 203), and refusing to obey an order (Code 307).  (*Id*., p. 39.)  The remaining charges were expunged.  The sanctions imposed included disallowance of 107 days of GCT.  (*Id*.)  The DHO advised Mr. Staine of the evidence which led to his findings and the reasons for his decision.  (*Id*., p. 40.)  Mr. Staine was also notified of his right to appeal the DHO's decision within twenty calendar days under the Administrative Remedy Procedure.  (*Id*.)  Mr. Staine received a copy of the DHO's report on June 17, 2014.  (*Id*.)

The DHO issued his report concerning incident number "2574130"[3] on June 13, 2014.  (*Id*., pp. 34 and 40.)

## IV. Discussion

Mr. Staine argues he was denied his due process rights in the course of his disciplinary hearing.  These violations occurred when:  (1) he failed to receive a copy of the incident report prior to his disciplinary hearing; (2) he did not waive his right to advance written notice of the charges against him prior to the disciplinary hearing (the signature on the waiver form is forged); (3) he received inadequate staff representative;

---

[3] Incident Report 2574103 was written by Officer Smith on April 21, 2014, charging Mr. Staine with assault (Code 101); possession of a weapon (Code 104); destroying and/or disposing of any item during a search or attempt to search (Code 115); interfering with a staff member in the performance of duties (Code 198); threatening another with bodily harm (Code 203); and refusing to obey an order (Code 307).  (*Id*., p. 23.)  It appears the DHO's report, while related to the Incident Report authored by Officer Smith concerning Mr. Staine and his cellmate's behavior on April 21, 2104, bears the incorrect incident report number.  It appears the last two numbers of the incident report were transposed.  (*Id*., pp. 5, 23 and 34.)  "[T]ypographical errors in an incident report do not rise to the level of a constitutional deprivation".  *Hairston v. Boyce*, Civ. No. 07-1945(JBS), 2008 WL 2095771, at *7 (D.N. J. May 16, 2008).  Thus, Mr. Staine is not entitled to habeas relief based on this typographical error.

and (4) the DHO failed to review the exculpatory video of the incident which would have shown "he did not 'bite' the officer." (ECF No. 1, p. 2.)  Respondent argues Mr. Staine was afforded all required due process protections he was entitled to receive relative to his disciplinary hearing for Incident Report 2574103 and that the DHO met the requisite "some evidence" evidentiary standard necessary to find Mr. Staine committed the prohibited acts. (ECF No. 5, p. 17.)

### A.    Due Process Requirements

A prisoner has a liberty interest in good time credits. *Denny v. Schultz*, 708 F.3d 140, 143 (3d Cir. 2013).  A prisoner's interest in good time credits "entitle[s] him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S. Ct. 2963, 2974,  41 L.Ed.2d 935 (1974). Prison officials satisfy due process requirements in an administrative disciplinary proceeding if a prisoner receives "(1) advance written notice of the disciplinary charges; (2) an opportunity ... to call witnesses and present documentary evidence; and (3) a written statement from the fact finder which explains the reason for the decision and the supporting evidence. *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (citing *Wolff*, 418 U.S. at 563 - 67, 94 S.Ct. at 2978 - 82).  In addition, procedural due process requires "some evidence" to support disciplinary action. *Id*. at 454, 105 S.Ct. At 2773.  "This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of

witnesses, or even a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (*per curiam*) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). The relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455 - 56, 105 S. Ct. at 2774.

When a procedural error is alleged in the context of a prison disciplinary proceeding, the Third Circuit Court of Appeals has held that "[i]n the absence of a showing of prejudice," the outcome of the proceeding should not be overturned. *Griffin v. Warden*, 640 F. App'x 181, 184 (3d Cir. 2016) (*per curiam*).

### B.  BOP Disciplinary Procedures

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541.5, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff must prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing. 28 C.F.R. § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being

investigated for possible criminal prosecution.  28 C.F.R. § 541.4(c).  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  28 C.F.R. § 541.7(f).  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing.  28 C.F.R. §§ 541.7(a), (g).  While the UDC ordinarily consists of two or more staff, only one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO.  28 C.F.R. §541.7(b).  Inmates are provided with a written copy of the UDC's decision following its review of the incident report.  28 C.F.R. § 541.7(h).

The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement.  28 C.F.R. § 541.8(c).  The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses.  28 C.F.R. §§ 541.8(d), (e), (f).  The DHO will consider all evidence presented during the hearing and prepare a record of the proceedings.  28 C.F.R. § 541.8(f) and (h).  "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8(f). Following the hearing, the inmate will receive a written copy of the DHO's decision.  28 C.F.R. § 541.8(h).  The written report, while not required to be a verbatim record of the hearing, must be sufficient to document whether the inmate was advised of his rights during the DHO process, evidence relied upon by

the DHO, the DHO's decision, the sanction(s) imposed by the DHO and the reasons for the sanctions imposed.  (*Id*.)

Prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Sandin v. Conner*, 515 U.S. 472, 481 - 82, 115 S.Ct. 2293, 2299, 132 L.Ed.2d 418 (1995).  Failure to adhere to administrative regulations does not necessarily constitute a constitutional violation. *Flanagan v. Shively*, 783 F. Supp. 922, 931 (M.D. Pa. 1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines.").

### C. Merits Consideration of Mr. Staine's Due Process Claims

### 1. Advance Written Notice of the Disciplinary Charges.

Mr. Staine argues he never received a copy of the incident report in advance of his disciplinary hearing (ECF No. 1, p. 2) or the government's response to his habeas petition.  (ECF No. 8, p. 1.)  He also claims he did not waive this right to written notice of the charges against him at least 24-hours in advance of his disciplinary hearing.  Considering the record as a whole, there is no factual support for his allegations.  Even if, contrary to the evidence of the record, he did not receive a copy of the incident report prior to his hearing, Mr. Staine fails to demonstrate he suffered any prejudice due to this alleged error.

The DHO addressed Mr. Staine's claim that he had not received a copy of the incident report in advance of the disciplinary hearing.  (*Id*., p. 17.)  The record before the DHO showed that Mr. Staine was provided with written notice of the charges, the

-11-

incident report, on two separate occasions.  (ECF No. 5-1, pp. 34 - 35.)  Nonetheless, the DHO afforded Mr. Staine "the opportunity to postpone the proceeding, or waive 24-hour notice and proceed."  (*Id*., p. 35.)  The record reflects Mr. Staine chose to waive the 24-hour notice and proceed with the hearing.  (*Id.,* p. 35.)  Mr. Staine signed a witnessed waiver form.  (*Id*., p. 27.)  Other than his statement, Mr. Staine presents no evidence to support his assertion that he either did not sign the waiver form or was forced to proceed with his disciplinary hearing without advance notice of the charges against him.  Mr. Staine's staff representative was present at the disciplinary hearing. Mr. Staine's staff representative noted "no discrepancies in the discipline process and was disclosed all documentation in reference to [his] case." (*Id*., p. 34.)   To the extent Mr. Staine seeks to assert that his receipt of a written copy of the incident report at his disciplinary hearing violated his due process rights, this theory is also unsupported. Constitutionally adequate due process at a prison disciplinary hearing does not require that an inmate be informed of every detail of the charges so that he can prepare what in his opinion is the best defense.  It only requires that he be informed of the charges to enable him to marshal the facts and prepare a defense.  *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978 - 79.

Here, Mr. Staine was advised of the reasons for his pre-hearing confinement in the Special Housing Unit.  (ECF No. 1, p. 13.)  Five weeks later, after the incident was released for administrative processing, the charge was investigated by prison staff who met with Mr. Staine, in advance of his UDC hearing.  (ECF No. 5-1, p. 23.)  He concedes he was shown a list of codes he allegedly violated at the UDC hearing.  (ECF

No. 1, p. 13.) At the UDC hearing he stated the "[i]ncident is not accurate." (ECF No. 5-1, p. 23.) Furthermore, aware of the charges against him, Mr. Staine decided, and does not argue to the contrary, that he did not wish to call any witnesses on his behalf. (*Id*., p. 24.) Likewise, Mr. Staine does not describe any exculpatory testimony or documentary evidence that he could have presented at the DHO hearing had he received an advanced written copy of the charges against him. He cites no evidence that he could have conceivably offered that could have changed the outcome of the DHO hearing. These facts, and Mr. Staine's ability to recall events at the disciplinary hearing, belie his claims that he was unable to participate in the disciplinary proceeding or present a defense due to his failure to received advanced written notice of the charges against him. He has not demonstrated prejudice to warrant habeas relief due to his alleged lack of receipt of the incident report prior to his disciplinary hearing.

At best, in his Reply, Mr. Staine suggests that had he received a copy of the incident report in advance of the DHO hearing "he would had [sic] challenged during the administrative process the incorrect DHO's report number 2574130 or incident report number as being defective which would have rendered the DHO decision void." (ECF No. 8, p. 2.) Mr. Staine's theory is flawed. The discrepancies between the incident report number and the DHO's report number would not have been known to him until the DHO issued his report *after* the conclusion of the hearing. Additionally, the finding of the typographical error would not exculpate Mr. Staine of the offenses he was found guilty of committing. Clearly, a typographical error in the reports is not the foundation of a due process violation contemplated by *Wolff*. *See Griffin*, *supra.*

In sum, there is nothing in the record to substantiate Mr. Staine's claims that he did not did not receive a copy of the incident report prior to his DHO hearing.  Likewise, there is nothing in the record, or offered by Mr. Staine, to suggest that his witnessed signature on the waiver of 24-hour notice was forged or that he requested a continuance of the hearing for the purpose of reviewing the incident report and it was denied by the DHO.  Regardless, Mr. Staine fails to argue or demonstrate any prejudice to him as a result of his alleged denial of a copy of the incident report.  Here, the record simply does not support a finding that Mr. Staine never received a copy of the incident report before his DHO hearing.  Alternatively, even if he was not provided a copy of the report prior to the hearing in the absence of any prejudice or harm to Mr. Staine, the Court will not disturb results of the hearing.

### 2.     Right to Staff Representation.

Petitioner argues that his procedural due process rights were violated when his appointed staff representative did not meet with him prior to the DHO hearing "to go over charges filed against" him. (ECF No. 1, p. 2.)  He infers he was prejudiced by this procedural misstep because he would have "informed him that he did not receive a copy of the incident report ... and would have also requested that the exculpatory video footage" of Officer Smith exiting the cell "after the alleged assault without any bite marks on his wrist" be reviewed. (ECF No. 8, p. 2.)  These allegations, which are contradicted by Mr. Staine's own statements and the record, even if true are unavailing.

*Wolff* provides a right to staff representation at a prison disciplinary hearing "only when the inmate is illiterate or the issue to be adjudicated is complex." *Macia v. Williamson*, 219 F. App'x 229, 232 (3d Cir. 2007). "Where there is no right to staff assistance, there can be no due process violation based on inadequate staff assistance." *Townsend v. Warden, FCC Lewisburg*, 2013 WL 371930, at *7 (M.D. Pa. Jan. 30, 2013) (*citing Wolff*, 418 U.S. at 570, 94 S.Ct. at 2982.) Furthermore, it is well established that prisoners do not have a due process right of confrontation and cross-examination, or a right to appointed counsel in prison disciplinary hearings. *Wolff*, 418 U.S. at 569 - 70, 94 S.Ct. at 2981. To the extent Mr. Staine argues he did not have the opportunity to meet with his staff representative in advance of his hearing, while at most a violation of BOP policy, such an infraction would not rise to the level of a due process violation where he is not illiterate, nor does he contend to be, and the Court does not find this to be a complex case. *See Flanagan, supra.*

Mr. Staine does not contest that he was afforded staff representation at his hearing. He admits that after he advised the DHO of his desire to meet with this staff representative and have him review the video "the hearing was postponed in order for the video footage to be reviewed." (ECF No. 8, p. 2.) The staff representative, "J. Thomas, General Maintenance Foreman, noted no discrepancies in the discipline process and was disclosed all documentation in reference to this case. Further, he met with Staine in advance of the hearing to discuss the case." (ECF No. 1, p. 16.) He specifically noted that "[He] watched the video. [He] couldn't see in the cell. [He] couldn't hear anything." (*Id.*) While Mr. Staine may not agree that his staff

-15-

representative was unable to view the moment when, or how, Officer Smith injured his wrist, Mr. Staine's request that his staff representative review the video tape was granted prior to the hearing. Additionally, Mr. Staine elected not to present witnesses or documentary evidence. Likewise, he fails to demonstrate or suggest any evidence or defense he could have offered during his own statement at the disciplinary hearing that was not heard, available, or considered due to inadequate staff representation.

Because Petitioner is not illiterate, the issues of this case are not complex, and a staff representative was appointed to him, the staff member met with him and reviewed the video as requested by Mr. Staine, and Petitioner fails to demonstrate any resulting prejudice to him or unfairness in the proceeding, the Court finds Mr. Staine was afforded all the rights set forth in *Wolff*.

### 3. Petitioner was not Denied Right to Present Evidence.

Mr. Staine claims the DHO failed to review the video evidence of the incident when requested to do so as part of his defense. Had the DHO reviewed the video, Mr. Staine claims it would have "show[n] that he did not 'bite' the officer." (ECF No. 1, p. 2.) When a liberty interest is at stake in a prison disciplinary proceeding, a prisoner is entitled to call witnesses and present evidence on their behalf. *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2979. The Third Circuit Court of Appeals has held "that an inmate's right to procedural due process is violated when a hearing examiner simply fails to view available evidence to determine its relevance and suitability for use at a disciplinary

hearing." *Burns v. PA Dept. of Corr.*, 642 F.3d 163, 174 (3d Cir. 2011).  That is simply not the case here.

Mr. Staine offers no evidence in support of this claim that the DHO failed to review or consider the relevancy of the video of the April 21, 2014 incident.  Moreover, his assertion is contradicted by the record.  First, the DHO states he considered the media evidence in the case and that the events in Mr. Staine's cell were "not discernible."  (ECF No. 5-1, p. 38.)  Second, Mr. Staine states that the hearing was "postponed' so his staff representative could review the video.  (ECF No. 8, p. 2.)  He too noted he "couldn't see in the cell."  (ECF No. 5-1, p. 34.)  As none of these facts are disputed, Mr. Staine's due process claim fails.

### D.     Some Evidence of Mr. Staine's Guilt Exists.

As noted above, the DHO's decision is required to be supported by some evidence in the record.  *See Hill*, 472 U.S. 454, 104 S.Ct. at 2773.  The "some evidence" standard is a lenient one, and requires only that the disciplinary decision is "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  *Id.* at 457, 104 S.Ct. at 2775.

Turning to the facts of this case, the Court concludes that the evidence before the DHO was sufficient to meet the "some evidence" standard.  In addition to Mr. Staine's statement, staff eye witness statements, medical records and the video of the incident were reviewed and considered by the DHO before finding Mr. Staine guilty of

assault, possession of a weapon, threatening staff and refusing to obey an order. (ECF No. 5-1, pp. 35 - 40.)

While Mr. Staine denies biting Officer Smith, refusing to obey an order, or threatening any staff member, he did admit to possessing the weapon depicted in the photographic evidence at the hearing. (*Id*., p. 35.)  Thus, no further discussion is needed as to the charge of possession of a weapon.  Mr. Staine was given an order to exit his cell and submit to a search.  The DHO relied on the eye witness report of Officer Smith who wrote the incident report to find that Mr. Staine refused an order to remove his hand from the bottom wall locker in the cell and exit the cell. (*Id*., pp. 37 and 50.)  Mr. Staine admits to attempting to flush the weapon he possessed at the time down the toilet. (*Id*., p. 35.)  Officer Smith states Mr. Staine struggled with staff as they attempted to place him in restraints.  Officer Galinsky describes "[b]oth inmates within the cell were fighting staff by kicking at staff members who were attempting to restrain them." (*Id*., p. 45.)  Officer Smith also stated Mr. Staine bit him while resisting to restrain him and threatened to kill staff. (*Id*., p. 50.)  Although Mr. Staine believes the video of the incident is exculpatory, specifically proving he did not bite Officer Smith, his staff representative and the DHO did not agree with his assessment as they found it less than helpful in discerning what happened within his cell on April 21, 2014.  As supported by the record, the DHO's decision meets or exceeds the "some evidence" standard in finding Mr. Staine guilty of refusing to obey an order, possession of a weapon, assault, and threatening staff.

**V.      Conclusion**

For the reasons set forth above, there is no basis to expunge the incident report and sanctions imposed by the DHO because Mr. Staine has not proven that he was denied procedural due process at his disciplinary hearing or that there was insufficient evidence to support the DHO's findings.   Accordingly, Mr. Staine's request for a writ of habeas corpus will be denied.


                          **/s/ A. Richard Caputo**
                          **A. RICHARD CAPUTO**
                          **United States District Judge**

**Date: January 17, 2017**